UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT LAMAR TOMANETZ,

    Petitioner,

v.                                    Case No. 8:21-cv-2616-JLB-LSG

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Robert Lamar Tomanetz, a Florida state prisoner, timely filed a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. 1.) Having considered the petition, (*id.*), the response in opposition, (Doc. 9), and Tomanetz's reply, (Doc. 12), the petition is denied.

## I.    Background and Procedural History

A Florida state court jury convicted Tomanetz of sexual battery while coercing the victim to submit by threatening to use force or violence likely to cause serious personal injury (count one), aggravated battery (count two), grand theft (count three), and false imprisonment (count four). (Doc. 9-1, Ex. C.) The state trial court sentenced him to consecutive prison terms of 30 years on count one, 15 years on count two, five years on count three, and five years on count four. (Doc. 9-1, Ex. C-1.) The state appellate court *per curiam*

affirmed the convictions and sentences. (Doc. 9-1, Ex. Q.) The state appellate court also *per curiam* affirmed the denial of Tomanetz's motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 9-1, Exs. V, W, AA, II.)

## II.   Facts[1]

On March 20, 2015, police responded to a call about the victim in this case. (Doc. 9-1, Ex. B, pp. 40-42.) She was in a parking lot at the Chassahowitzka Wildlife Management Area in Hernando County, Florida. (*Id.*, pp. 40-44.) The victim, who was wearing only a tank top, had scratches on her body and was dirty and disoriented. (*Id.*, pp. 44-45.) A nurse who treated the victim at a hospital found dirt and grass in the victim's mouth and esophagus and observed injuries, including bruises on her face and body and circular wounds on her chest and legs. (*Id.*, pp. 52-53.)

The victim told the nurse that someone had taken her hostage, forced her to take drugs, and raped and beat her. (*Id.*, p. 54.) The victim also told a second nurse that she was forced to perform oral sex, and that she was held down and burned. (*Id.*, pp. 113–16.)

The victim went on to describe a days-long episode of drug use involving Tomanetz and several other people. During this period, Tomanetz accused the

---

[1] This factual summary is based on the trial transcript.

victim of stealing his child support card, food stamp card, and debit card. (*Id.*, p. 160.) He became enraged and threatened to kill the victim. (*Id.*, pp. 152-53, 161–63.) At one point, Tomanetz tied the victim to a chair and tried to force her to smoke meth. (*Id.*, pp. 180-81.) When she could not inhale the smoke, Tomanetz burned her with a cigarette and a meth pipe. (*Id.*)

At some point, the victim was placed in the trunk of her car while Tomanetz screamed that she was a liar. (*Id.*, pp. 170-71.) After Tomanetz started driving the vehicle, the victim managed to pull the emergency trunk release. (*Id.*, p. 172.) Tomanetz pulled over, placed the victim in the passenger seat, and told her that he did not want to kill her but that he would have to because she kept lying. (*Id.*, p. 173.) Tomanetz yelled at her and repeatedly punched the side of her head. (*Id.*, p. 174.) He ripped off her bra and wrapped it around her neck. (*Id.*) Tomanetz made the victim perform oral sex on him "over a period of time," and whenever she stopped, he grabbed the bra around her neck or hit her. (*Id.*)

After Tomanetz pulled over near a wooded area, he dragged the victim out of the car by her hair, pushed her head into the side of the vehicle, and urinated into her mouth. (*Id.*, p. 176.) Tomanetz began to poke the victim with a small knife while questioning her about his child support card. (*Id.*, p. 175.) When the victim responded that she did not know what he was talking about,

Tomanetz told her that he did not want to have to kill her. (*Id.*) They went into the woods as Tomanetz held a gun to the victim's head. (*Id.*, p. 176.)

At that point, the victim believed that she hallucinated about a SWAT team and an alligator; she conceded that for a time, she did not know what was real. (*Id.*, pp. 176–77.) The victim recalled waking up in the woods and walking up a hill to the road where she was found. (*Id.*, pp. 181–82.) When she testified at trial, the victim acknowledged that her memory was "fuzzy" about the timing and sequence of events and that she hallucinated while in the woods. (*Id.*, pp. 176, 205, 235.) But the victim was sure that Tomanetz committed the acts that she described in her testimony. (*Id.*, pp. 186, 205–06, 235.)

## III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Id.* at 412. A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being

5

presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

## IV. Discussion

### A. Ground One

Tomanetz argues that the state trial court erred in denying his motion for judgment of acquittal on the charge of sexual battery. Tomanetz contends that the State's evidence was insufficient to show the victim's lack of consent to the sexual activity. He alleges that the victim's admission to having hallucinated around the time of the sexual battery undermined her credibility.

The Court construes Tomanetz's claim as alleging a violation of the Fourteenth Amendment's Due Process Clause, as he argued on direct appeal. (Doc. 9-1, Ex. O, pp. 6-7.) Whether the evidence was sufficient to support Tomanetz's sexual battery conviction is reviewed under the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979). This standard asks whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 319.

Tomanetz was charged under § 794.011(4)(b), Fla. Stat, with sexual battery while coercing the victim to submit by threatening to use force or violence likely to cause serious personal injury. (Doc. 9-1, Ex. A.) To convict Tomanetz, the State had to prove five elements beyond a reasonable doubt: (1) Tomanetz was 18 years of age or older; (2) the victim was 18 years of age or older; (3) Tomanetz committed sexual battery on the victim; (4) the act of sexual battery occurred without the victim's consent; and (5) Tomanetz coerced the victim to submit by threatening to use force or violence likely to cause serious personal injury to the victim, and the victim reasonably believed that Tomanetz had the present ability to execute the threat. Fla. Stat. § 794.011(4)(b), (e)(2).

"Sexual battery" is defined in relevant part as the "oral . . . penetration by, or union with, the sexual organ of another . . . ." Fla. Stat. § 794.011(1)(j). "Serious personal injury" is defined as "great bodily harm or pain, permanent disability, or permanent disfigurement." Fla. Stat. § 794.011(1)(i).

Tomanetz has not shown that the evidence, taken in the light most favorable to the State, was insufficient to satisfy due process. The State presented evidence that Tomanetz committed sexual battery on the victim without her consent. The victim testified that Tomanetz forced her to perform

7

oral sex on him over a period of time and that Tomanetz's penis penetrated her mouth. (Doc. 9-1, Ex. B, pp. 174--5.) She stated that she did not consent to this act. (*Id.*, p. 185.) The victim also testified that before and during this time, Tomanetz repeatedly punched and hit her, prevented her from stopping by grabbing the bra he had put around her neck, and said he would have to kill her because she was a liar. (*Id.*, pp. 173–75.)

Thus, the State presented evidence that Tomanetz committed a sexual battery without the victim's consent. The State also presented evidence that Tomanetz coerced her to submit by threatening to use force or violence likely to cause serious personal injury, which threats the victim reasonably believed Tomanetz could carry out. Tomanetz fails to show that no rational juror, considering this evidence in the light most favorable to the State, could find that the State proved the essential elements of the charged offense. *See Jackson*, 443 U.S. at 319.

While Tomanetz argues that the victim's admission to hallucinating shows that she was not credible, any question about the victim's credibility was for the jury. *See Stillions v. State*, 297 So. 3d 681, 685 (Fla. 1st DCA 2020) (affirming the denial of a motion for judgment of acquittal and stating that "resolution of this case requires a credibility determination. And a jury, not the court, must make that determination"). The jury was free to credit the

victim's testimony that although she hallucinated, she was certain about Tomanetz's actions.

The state trial court's task was only to decide whether the State's evidence established a prima facie case of sexual battery. *See State v. Williams*, 742 So. 2d 509, 511 (Fla. 1st DCA 1999) ("A motion for judgment of acquittal is designed to challenge the legal sufficiency of the evidence. If the State has presented competent evidence to establish every element of the crime, then a judgment of acquittal is improper.").

Moreover, in assessing the reasonableness of the state court's decision, this Court likewise looks to whether the State made a prima facie showing of guilt and does not re-weigh the evidence. *See Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987) ("Faced with a record of historical facts that supports conflicting inferences, [a federal habeas court] must presume that the jury resolved such conflicts in favor of the prosecution, deferring to the jury's judgment as to the weight and credibility of the evidence. The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief.") (citations omitted).

The evidence presented at trial, considered in the light most favorable to the State, was sufficient to defeat Tomanetz's motion for judgment of acquittal. Tomanetz does not show that the state court's rejection of his claim was

9

contrary to or involved an unreasonable application of federal law, or was based on an unreasonable factual determination.

In his reply, Tomanetz challenges the sufficiency of the evidence supporting his other convictions. He did not raise these claims in his habeas petition. The Court will not consider new claims raised for the first time in a reply brief. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court." (citation omitted)). Tomanetz is not entitled to relief on Ground One.

### B. Ground Two

Tomanetz contends that the prosecutor improperly revealed to the jury that he was in custody at the county jail. He argues that the prosecutor's alleged misconduct violated his rights under the Fifth, Sixth, and Fourteenth Amendments.

During her closing argument, the prosecutor acknowledged that several of the State's witnesses had engaged in illicit activity:

> I mean, we have to concede, you know, these people are – are awful. They have not – they obviously – Christine tells you, she's in prison. She's obviously a felon. Mr. Tomanetz is a member of our Hernando County Jail. You know, but that's – it doesn't matter when you look at what the whole big picture is. Because when you hang around bad people, you get bad witnesses. But they're not bad witnesses. They're good witnesses because of what – their corroboration in the whole thing.

(Doc. 9-1, Ex. B, pp. 590–91.)

At a bench conference a short time later, the prosecutor said she misspoke and meant to refer to a witness, Howard Price, who testified in his jail uniform. (*Id.*, pp. 435, 591–92.) The trial court stated that "it seemed clear to the Court and I think most people in the courtroom that she misspoke. She meant to say Mr. Price," and noted that the prosecutor "was pointing to the witness stand at the time. . ." (*Id.*, pp. 592–93.) The prosecutor then told the jury that she was talking about Howard Price when she pointed to the witness stand and that she misspoke. (*Id.*, p. 593.)

Tomanetz has not shown that the state appellate court's rejection of his prosecutorial misconduct claim was unreasonable. "To find prosecutorial misconduct, a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *Conner v. GDCP Warden*, 784 F.3d 752, 769 (11th Cir. 2015) (quoting *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991)). To meet the second prong, "the prosecutor's improper remarks must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Conner*, 784 F.3d at 769 (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

A prosecutor should avoid addressing a defendant's custody status. *See United States v. Christian*, 614 F. App'x 1001, 1004 (11th Cir. 2015) (explaining

that comments about a defendant's incarceration can violate the defendant's due process right to a fair trial and stating that "a jury's knowledge of a defendant's pre-trial incarceration 'may lead the jury to speculate that the defendant is particularly dangerous.' " (quoting *United States v. Villabona-Garnica*, 63 F.3d 1051, 1058 n.6 (11th Cir. 1995))).

Even if the prosecutor's comment was improper, Tomanetz fails to show resulting prejudice. The prosecutor's isolated remark was made when discussing State witnesses, and the prosecutor informed the jury of her mistake a short time later. Tomanetz has not demonstrated that this single comment infected the whole trial with unfairness given the State's overall evidence of guilt, including testimony about Tomanetz's threats and actions that suggested he was dangerous. *See Christian*, 614 F. App'x at 1004–05.

Tomanetz fails to show that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination. He is not entitled to relief on Ground Two.

### C. Ground Three

Tomanetz asserts that the state trial court erred by instructing the jury on an uncharged offense. Tomanetz was charged with sexual battery while coercing the victim to submit by threatening to use force or violence likely to cause serious personal injury. He contends that the trial court erroneously

12

instructed the jury on "sexual battery—specified circumstances." (Doc. 1, p. 13.) Tomanetz alleges violations of his rights under the Fifth, Sixth, and Fourteenth Amendments.

Respondent argues that Ground Three is unexhausted and procedurally defaulted[2] because Tomanetz did not object to the instruction on this basis at trial. The Court need not determine whether the claim is procedurally defaulted because, even if it were not procedurally defaulted, the claim nonetheless fails. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event.").

The Fifth Amendment protects a criminal defendant's right to be tried solely on the offenses with which he is charged. *United States v. Feldman*, 931 F.3d 1245 (11th Cir. 2019). Tomanetz fails to show that the state trial court violated this right by instructing the jury on an uncharged offense. The jury instruction was consistent with Florida Standard Jury Instruction 11.3, which contains instructions for sexual battery charges that involve a range of "specified circumstances." Fla. Std. Jury Instr. (Crim.) 11.3.

One of these circumstances, under which Tomanetz was charged, is that the defendant coerced the victim to submit by threatening to use force or

---

[2] *See* 28 U.S.C. § 2254(b)(1) (stating that a state prisoner must exhaust available state court remedies before pursuing a federal habeas petition).

13

violence likely to cause serious personal injury. *Id.* Other circumstances covered by Standard Jury Instruction 11.3 include, for instance: the victim was physically helpless to resist; the defendant coerced the victim to submit by threat of retaliation; and the defendant rendered the victim mentally or physically incapacitated by the use of a substance. *Id.*; *see also In re Standard Jury Instructions in Criminal Cases—Instructions 7.8, 7.8(A), and 11.-11.6(A)*, 190 So.3d 1055 (Fla. 2016) (amending Standard Jury Instruction 11.3 and establishing the version in effect at the time of Tomanetz's trial).

The standard instruction form lists all of the possible specified circumstances and instructs the state trial court to include the applicable circumstance(s) in its instruction. *Id.* The state trial court did so here. Although the umbrella term "specified circumstances" was used in the instruction's heading, the content of the instruction given at trial involved only the charged circumstance of coercing the victim to submit by threatening to use force or violence. (Doc. 9-1, Ex. D, pp. 98–99.) No uncharged "specified circumstances" were included in the instruction. (*Id.*)

Tomanetz has not shown any violation of his constitutional rights on the basis that the state trial court improperly instructed the jury on an uncharged offense. He is not entitled to relief on Ground Three.

    **D.**    **Additional Ground in Tomanetz's Reply**

14

In his reply, Tomanetz raises a new ground for relief. He asserts that the state trial court erred by running his sentences consecutively. (Doc. 12, pp. 11-12.) As addressed, the Court will not consider new claims raised for the first time in a reply. *See Herring*, 397 F.3d at 1342.

## V.  Certificate of Appealability

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability ("COA"). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Tomanetz must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Tomanetz has not made the requisite showing. Finally, because Tomanetz is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

It is therefore **ORDERED** that Tomanetz's Petition for Writ of Habeas Corpus, (Doc. 1), is **DENIED**. The **CLERK** is directed to enter judgment against Tomanetz and in Respondent's favor and to **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on January 3, 2025.

*[signature]*

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE